UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CODY W. PHELPS, <br><br> Plaintiff, <br><br> v. <br><br> DR. ARNETT, <br><br> Defendant. | CAUSE NO. 3:18-CV-588-DRL |

OPINION AND ORDER

Cody W. Phelps, a prisoner without a lawyer, is proceeding in this case on one claim "against Dr. Arnett in her individual capacity for compensatory and punitive damages for allegedly failing to provide Mr. Phelps with adequate dental care while housed at the Indiana State Prison, in violation of the Eighth Amendment[.]" ECF 21 at 4. Dr. Arnett filed a motion for summary judgment. ECF 49. Mr. Phelps filed a response. ECF 78. Dr. Arnett did not timely file a reply but has moved the court for leave to file a belated reply. ECF 83.[1] Mr. Phelps objects to Dr. Arnett's motion to file a belated reply. ECF 84. The court will now rule on the summary judgment motion.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need

---

[1] The court has reviewed Dr. Arnett's belated reply and has concluded the reply does not change the outcome of this case. Accordingly, Dr. Arnett's motion for leave to file a belated reply (ECF 83) will be denied as moot.

was objectively serious;[2] and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To be held liable for deliberate indifference to an inmate's medical needs, a medical professional must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

A prisoner is not entitled to demand specific care, nor is he entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). "Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). When the defendants have provided some level of care for a prisoner's medical condition, to establish deliberate indifference the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

Dr. Arnett was employed at Indiana State Prison (ISP) as a dentist from April 1, 2017 until June 14, 2018. ECF 51-1 at 1. Prior to Dr. Arnett's arrival at ISP, Mr. Phelps had

---

[2] Dr. Arnett concedes for purposes of the summary judgment motion that Mr. Phelps' medical need was objectively serious. ECF 50 at 9.

one root canal. ECF 51-3 at 22. After the root canal, Mr. Phelps began experiencing pain in his chin. *Id.* at 24-25.

      A.      *Medical care from December 27, 2017 through January 21, 2018.*

On December 27, 2017, Mr. Phelps filed a health care request asserting he was experiencing pain in his jaw and asking for an x-ray. ECF 51-2 at 17. On January 3, 2018, Dr. Arnett assessed Mr. Phelps and conducted an oral examination, provided oral hygiene instructions, and took an x-ray of Mr. Phelps' teeth. ECF 51-1 at 2. Dr. Arnett said the x-ray showed "a radiolucency of tooth number 27," which indicates "an area of tissue which is less dense." *Id.* Some radiolucencies are normal, while others indicate potential cavities, tooth decay, or infection. *Id.* As a result of the x-ray results, Dr. Arnett recommended a root canal for tooth number 27 and placed Mr. Phelps on the list to receive such treatment. *Id.* Dr. Arnett did not prescribe Mr. Phelps any antibiotics or pain medication at that time. ECF 51-3 at 29-31. Dr. Arnett did not believe antibiotics were indicated based on Mr. Phelps' clinical presentation, x-ray results, and subjective symptoms, and she did not believe Mr. Phelps required pain medication because he already was taking Gabapentin to address pain complaints. ECF 51-1 at 4.

On January 4, 2018, Mr. Phelps submitted a second request for health care, asserting Dr. Arnett had not provided him any treatment for the infection in his jaw. ECF 51-2 at 18. Specifically, Mr. Phelps complained he was exhibiting symptoms of an infection because he had no energy, could not eat, his lower back hurt, he had a slight temperature, he was experiencing hot and cold flashes, his urine was dark, and his weight was fluctuating. *Id.* The ISP dental clinic received this request on January 12, 2018. ECF

51-1 at 2-3. Mr. Phelps' case worker also had reported to the dental clinic that Mr. Phelps was experiencing swelling in his jaw. *Id.* at 3. In response, Dr. Arnett prescribed Mr. Phelps nine days' worth of antibiotics and six days' worth of Tylenol. *Id.*; ECF 51-2 at 18; ECF 78 at 12. Because neither party disputes these facts, the court accepts them as undisputed.

Dr. Arnett argues she was not deliberately indifferent to Mr. Phelps' medical needs because she provided Mr. Phelps treatment at the January 3 examination and her decision to wait until January 12 to prescribe Mr. Phelps antibiotics and Tylenol was an exercise of her professional judgment. ECF 50 at 9-14. Dr. Arnett attests there are medical reasons for limiting the prescription of antibiotics to patients, as overreliance on antibiotics can lead to the creation of antibiotic-resistant bacteria that may exacerbate conditions moving forward. ECF 51-1 at 4-5.

Here, it is undisputed Dr. Arnett examined Mr. Phelps on January 3, performed an x-ray, and scheduled Mr. Phelps to receive a root canal. It is also undisputed Dr. Arnett prescribed Mr. Phelps antibiotics from January 12 until January 21. Thus, because it is undisputed Dr. Arnett provided Mr. Phelps treatment during this time period, the burden is on Mr. Phelps to show this treatment was "plainly inappropriate." *See Hayes*, 546 F.3d at 524.

Mr. Phelps argues it was plainly inappropriate for Dr. Arnett not to prescribe him pain medication and antibiotics at the January 3 examination because Dr. Arnett knew he had an infection at that time and he was not at risk of being overprescribed antibiotics because he had not taken antibiotics for years. ECF 78 at 9-10. However, Mr. Phelps offers

no evidence Dr. Arnett's treatment was inappropriate. By contrast, Dr. Arnett has provided evidence the decision to wait until January 12 to prescribe Mr. Phelps antibiotics and pain medication was an exercise of her professional judgment. Specifically, Dr. Arnett attests she determined not to prescribe Mr. Phelps antibiotics on January 3 based on his clinical presentation, x-ray results, subjective symptoms, and because of the risks associated with overreliance on antibiotics. ECF 51-1 at 4. Moreover, Dr. Arnett provides medical articles discussing the risks of overreliance on antibiotics. ECF 51-2 at 25-35. Dr. Arnett also attests she determined not to prescribe Mr. Phelps pain medication on January 3 because he already was taking Gabapentin. Based on this evidence, no reasonable jury could conclude it was "plainly inappropriate" for Dr. Arnett to wait until January 12 to prescribe Mr. Phelps antibiotics and pain medication. Thus, no reasonable jury could conclude Dr. Arnett did not provide constitutionally adequate medical treatment to Mr. Phelps between December 27, 2017, and January 21, 2018.

However, the inquiry does not end there. Mr. Phelps also argues Dr. Arnett was deliberately indifferent because she provided him no treatment for his ongoing jaw infection after the antibiotics ran out on January 21, 2018. ECF 78 at 9-12. Specifically, Mr. Phelps argues he began submitting requests for health care on March 25, 2018, but received no treatment in response to these requests. *Id.* Because Mr. Phelps provides no evidence Dr. Arnett was aware of an ongoing medical need prior to his filing of the March 25, 2018, health care request, no reasonable jury could conclude Dr. Arnett failed to not provide Mr. Phelps adequate medical treatment between January 21 and March 25, 2018.

B. *Medical care from March 25, 2018 through June 14, 2018.*

Mr. Phelps provides evidence showing the following: On March 25, 2018, Mr. Phelps submitted a request for health care asserting he was "still suffering severe pain in my chin" and needed an x-ray, but he was not seen by any medical personnel in response to this request. ECF 78 at 4; ECF 78-2 at 15. On April 23, 2018, Mr. Phelps submitted another request for health care, asserting he was in extreme pain and his jaw had a mass in it. ECF 78 at 4-5; ECF 78-2 at 16. A nurse responded that it did not appear Mr. Phelps had any infection and recommended he purchase Tylenol from the commissary. *Id*. However, Mr. Phelps could not purchase Tylenol because he was indigent. ECF 78 at 5. Mr. Phelps concludes Dr. Arnett never provided him with any treatment between January 21, 2018 and June 14, 2018, when Dr. Arnett left ISP. *Id.* at 12.

Dr. Arnett does not dispute Mr. Phelps submitted health care requests in March 2018 and April 2018, nor does she dispute he received no treatment in response to these requests. Instead, she argues she was not deliberately indifferent to Mr. Phelps' medical need during this time period because Mr. Phelps was evaluated in the dental clinic on June 8, 2018, and complained of pain in tooth number 18 but did not mention tooth number 27. ECF 51-1 at 4. Mr. Phelps testifies he never saw Dr. Arnett in June 2018, and that he did not see Dr. Arnett or any other member of the dental staff between January 3, 2018, and June 14, 2018. ECF 51-3 at 44-45. There is thus a disputed fact whether Dr. Arnett saw Mr. Phelps or provided him any treatment on June 8, 2018.

Accordingly, when construing the facts in the light most favorable to Mr. Phelps, a reasonable jury could conclude Dr. Arnett did not provide Mr. Phelps constitutionally

6

adequate medical treatment between March 25, 2018, and June 14, 2018, when Dr. Arnett left ISP. Because there are disputed material facts whether Dr. Arnett provided constitutionally adequate medical treatment during this time period, summary judgment is not warranted.

For these reasons, the court:

(1) DENIES AS MOOT Dr. Arnett's motion for leave to file a belated reply (ECF 83);

(2) GRANTS the motion for summary judgment (ECF 49) with respect to Cody W. Phelps' claim Dr. Arnett did not provide constitutionally adequate medical treatment between December 27, 2017, and March 24, 2018;

(3) DENIES the motion for summary judgment (ECF 49) with respect to Cody W. Phelps' claim Dr. Arnett did not provide constitutionally adequate medical treatment for providing no treatment for his jaw infection between March 25, 2018, and June 14, 2018; and

(4) REMINDS the parties this case is now proceeding only on Cody W. Phelps' claim Dr. Arnett did not provide constitutionally adequate medical treatment for providing no treatment for his jaw infection between March 25, 2018, and June 14, 2018.

SO ORDERED.

December 2, 2021                        *s/ Damon R. Leichty*
                                                 Judge, United States District Court